**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**ISAAC H. SMITH, et al.**                                                    **PLAINTIFFS**

**VERSUS**                          **CIVIL ACTION NO. 2:14cv127-KS-MTP**

**DOLGENCORP, LLC**                                                     **DEFENDANT**

<u>**DOLGENCORP, LLC'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO DISMISS OR, ALTERNATIVELY, FOR APPROPRIATE SANCTIONS**
**DUE TO THE PLAINTIFF'S MISREPRESNTATIONS**</u>

<u>**INTRODUCTION**</u>

In this premises liability case, the Plaintiff, Isaac Smith ("Mr. Smith") made material misrepresentations, under oath, concerning his physical condition and medical treatment prior to his fall at the Dollar General store at issue in this case, as well as concerning a fall he suffered following the incident at issue.  As is set out in more detail below, the dismissal of Mr. Smith's Complaint, with prejudice, is warranted in this instance, due to these material misrepresentations. Alternatively, should the Court determine that the dismissal of Mr. Smith's case with prejudice is too harsh, which is denied by Dolgencorp, this Court should preclude Mr. Smith from seeking any damages related to his lumbar spine, as well as any damages concerning his left wrist following the August 31, 2011 surgery.

<u>**FACTS/PROCEDURAL HISTORY**</u>

On July 12, 2011, Mr. Smith was a customer in the Dollar General store in Foxworth and suffered a fall.  As a result of this fall, he contends he suffered injuries to his left wrist and lumbar spine.  (*See* <u>**Exhibit "1"**</u> to Dolgencorp's Motion, transcript of deposition of Mr. Smith, p. 49, L 21 to p. 50, L 1, and <u>**Exhibit "2"**</u>, Plaintiff's Answer to Interrogatory No. 16).  Mr. Smith further contends that as a result of the injuries he allegedly suffered in this fall, he

underwent two (2) surgeries on his left wrist, on August 31, 2011 and November 15, 2012, and a surgery on his lumbar spine on February 29, 2012.  (*See* **Exhibit "2"**, Answer to Interrogatory No. 15).

The events as to how Mr. Smith fell are important here, and he provided the following testimony at his deposition on April 16, 2015:

> Q:      All right.  What happened next?
>
> A:      I reached up and got the gravy and it fell – the pack fell down on the floor.
>
> Q:      Okay.
>
> A:      And I reached down to pick it up and one of the pack fell out.  I picked the other pack up and put – turned around and fell, slipped and fell, all I know.

(*See* **Exhibit "1"**, p. 22, L 6-13)

> Q:      Okay.  So let me – I think I gotcha.  Let me make sure I've got this right. You reached up for the packet and the whole box fell?
>
> A:      Yeah.
>
> Q:      And you bent down to pick the box up and you got it back on the shelf. And then, if I understood you, there was still another packet on the floor?
>
> A:      Right.
>
> Q:      And when you bent down to pick it up is when you fell?
>
> A:      Yeah.
>
> Q:      The one packet that was still on the floor?
>
> A:      Yeah.

(**Id**. at p. 23, L 5-18).

In his sworn Interrogatory answers and his deposition testimony, Mr. Smith made the following representations under oath:  (1) he had no problems with balance or walking prior to his fall at Dollar General; (2) he never used a cane prior to his fall at Dollar General; (3) he had

not had any problems with his back nor sought medical treatment for his back prior to his fall at

Dollar General; and (4) he had not fallen since his fall at Dollar General.  Mr. Smith's medical

records, however, tell a different story.

**Balance and walking problems prior to the fall, including use of a cane**

        Mr. Smith testified that he had no issues with walking or balance, nor had he ever used a

cane, prior to his fall at Dollar General, nor had he seen any physician regarding any balance or

walking issues:

        Q:      All right.  Are there any other – were there any other times before your fall
                at Dollar General where you slipped and fell and hurt yourself?

        A:      No.

        Q:      Or had any fall where you hurt yourself?

        A:      No.

(*See* **Exhibit "1"**, p. 10, L 3-9).

        Q:      Had you ever used a cane before the day you fell?

        A:      **No**.

(**Id**. at p. 18, L 17-19) (**emphasis added**).

        Q:      Prior to the time of your fall at the Dollar General store, did you have any
                problems with balance or walking?

        A:      **No.**

        Q:      Okay.  And I think you told me this, I want to just make sure.   You
                weren't using a cane prior to this fall, were you?

        A:      **No.**

        Q:      Okay.  Did you have a cane that you were supposed to use and you
                weren't using it?

        A:      **No.**

3

Q:  <u>Prior to the time of this fall had you ever been to the doctor because you had any problems with walking or your balance or anything like that</u>?

A:  **No.**

(**Id.** at p. 47, L 24 to p. 48, L 13).

However, Mr. Smith's medical records tell a different story.  On May 3, 2010, <u>a little over a year **before** his fall at Dollar General</u>, Mr. Smith saw his urologist, Dr. David Stout.  In his note from this visit, Dr. Stout stated that "I have noted that one, <u>he is walking with a cane</u> and two, <u>he has developed kind of a shuffle to his gait</u>…"  (*See* **Exhibit "3"**, <u>Bates Nos. HC080-082</u>) (emphasis added).  Mr. Smith returned to Dr. Stout on June 7, 2010, and in his note from this visit, Dr. Stout stated that Mr. Smith had "a shuffling gait".  (**Id.** at <u>Bates Nos. HC087-088</u>).

On July 13, 2010, Mr. Smith saw Dr. Wendell Helveston, a neurologist at Hattiesburg Clinic, who noted that Mr. Smith had "…<u>a **two year history** of progressive slowness of movements..</u>", and a "<u>decreased ability to turn and he tends to have a "hitch" when he starts to walk.</u>" (*See* **Exhibit "3"** at <u>Bates Nos. 089-092</u>) (**emphasis added**).  The report from the brain MRI Dr. Helveston ordered, done on July 18, 2010, states that Mr. Smith is a "<u>59-year-old male **with a gait disturbance**.  He says he will fall if he is walking backward and sometimes he will walk backward uncontrollably.</u>"  (**Id.** at <u>Bates Nos. HC093-095</u>) (**emphasis added**).  Mr. Smith returned to Dr. Helveston on July 21, 2010, at which time Dr. Helveston noted that "<u>he has continued to have difficulties with his gait</u>, difficulties with stiffness…"  (**Id.** at <u>Bates Nos. HC114-116</u>) (emphasis added).

Mr. Smith returned to Dr. Stout on July 1, 2011 – <u>eleven (11) days before his fall at Dollar General</u> – and Dr. Stout noted that he "…<u>is having **a lot of difficulty with his gait**, difficulty initiating movement, and **small shuffling steps**</u>."  (*See* **Exhibit "3"** at <u>Bates Nos. HC131-133</u>) (**emphasis added**).

4

**<u>Prior back pain and medical treatment</u>**

On February 9, 2015, Mr. Smith provided his answers to Dolgencorp's Interrogatories,

under oath.  He provided the following response to Interrogatory No. 17:

> INTERROGATORY NO. 17:   Please describe any prior injury or
> condition that is similar to or was in a similar location to any of the injuries you
> contend you have suffered as a result of the subject incident, and with respect to
> each said prior injury or condition, please state the date of onset of the prior injury
> or condition, state the cause of the prior injury or condition, identify the
> physicians or other health care providers providing care or treatment for the prior
> injury or condition, and state the location where the prior injury or condition
> occurred.

> ANSWER TO INTERROGATOR NO. 17:   **<u>N/A.</u>**

(*See* **<u>Exhibit "2"</u>**) (**emphasis added**).  He also testified that he had not had any back problems

nor sought medical treatment for back problems prior to his fall at Dollar General:

> Q:   Okay.  Now, with your back, **<u>have you ever had problems with your
>       back prior to the fall</u>**?
>
> A:   **<u>No.</u>**
>
> Q:   <u>No?</u>
>
> A:   **<u>No.</u>**
>
> Q:   Okay.  **<u>Had you ever seen a physician for your back prior to the fall</u>**?
>
> A:   **<u>No.</u>**
>
> Q:   <u>No?</u>
>
> A:   **<u>No.</u>**

(*See* **<u>Exhibit "1"</u>**, p. 51, L 7-16) (**emphasis added**).

> Q:   **<u>Did you have back problems before this fall?</u>**
>
> A:   **<u>No.</u>**
>
> Q:   <u>You did not?</u>

A:      **No.**

(**Id.** at p. 57, L 14-18) (**emphasis added**).

Again, Mr. Smith's medical records paint a different picture.  Mr. Smith saw Dr. Ugwu-Dike on August 17, 2010, <u>eleven (11) months **before** his fall at Dollar General</u>, and reported complaints of low back pain.  (*See* **Exhibit "5"**, <u>Bates No. Dr.Ugwu-Dike055</u>).  Mr. Smith returned to Dr. Ugwu-Dike on January 18, 2011, with continued complaints of low back pain.  (**_Id._** at <u>Bates Nos. Dr.Ugwu-Dike045-046</u>).  Dr. Ugwu-Dike noted that Mr. Smith had "<u>pain in the lumbosacral region.  **The pain has been present for years**</u>."  (**_Id._**) (**emphasis added**).  He also noted that Mr. Smith had "prior episodes of back pain" and that "[t]here is significant past medical history of disc disease." (**_Id._**)  Dr. Ugwu-Dike prescribed Lortab to Mr. Smith to assist with his pain.  (**_Id._**).

Mr. Smith next saw Dr. Ugwu-Dike on February 16, 2011, and Dr. Ugwu-Dike's record from this visit indicates Mr. Smith reported low back pain.  (*See* **Exhibit "5"** at <u>Bates No. Dr.Ugwu-Dike043</u>).  Dr. Ugwu-Dike diagnosed Mr. Smith with Lumbago and again provided Mr. Smith with a prescription for his pain.  (**_Id._** at <u>Bates No. Dr.Ugwu-Dike044</u>).  Mr. Smith saw Dr. Ugwu-Dike again on May 5, 2011, and he again indicated Mr. Smith reported low back pain, continued his Lumbago diagnosis and again prescribed Lortab to Mr. Smith for pain.  (**_Id._** at <u>Bates Nos. Dr.Ugwu-Dike041-042</u>).  Mr. Smith's prescription records from Cook & Fortenberry Pharmacy indicate that he received narcotic medication for pain prescribed by Dr. Ugwu-Dike on a monthly basis from April of 2010 through July of 2011, including a prescription for pain medication on July 5, 2011, seven (7) days before his fall at Dollar General.  (*See* **Exhibit "6"**, <u>Cook & Fortenberry records</u>).

**A fall subsequent to Mr. Smith's fall at Dollar General where he injured his left wrist.**

In his deposition, Mr. Smith was specifically asked if he had suffered any falls since his fall at Dollar General:

> Q:   Did that fall at Thanksgiving happen before or after you fell at Dollar General?
>
> A:   Before.
>
> Q:   Before.  Okay.  <u>Now, what I'm talking about now is</u> **after you fell at Dollar General**.  **Have you had any other falls**?
>
> A:   **No.**

(*See* **Exhibit "1"**, p. 48, L 25 to p. 49, L 6) (**emphasis added**).

Again, Mr. Smith's medical records indicate that this testimony is false.  Mr. Smith had surgery on his left wrist on August 31, 2011, approximately seven (7) weeks following his fall at Dollar General.  (*See* **Exhibit "4"**, Bates No. SB&J0289).  Dr. Constantine Charoglu, who performed this wrist surgery, indicated on January 20, 2012, that Mr. Smith had recovered well from this surgery, and advised that Mr. Smith could return to him on an as-needed basis.  (**Id**. at Bates No. SB&J0290).

Mr. Smith did not return to Dr. Charoglu until July 27, 2012, **when he reported he fell about 2 weeks prior**, and he had some significant soreness in his wrist.  (*See* **Exhibit "6"**, at Bates No. SB&J0231).  He returned to Dr. Charoglu on September 7, 2012, at which time Dr. Charoglu noted the following concerning Mr. Smith's left wrist:  "[t]he patient did reasonably well, **but fell about 6 weeks ago**".  (**Id**. at Bates No. SB&J0227) (**emphasis added**).  Dr. Charoglu ordered a MRI of Mr. Smith's left wrist, and the order for this procedure indicates

"DIAGNOSIS:  719.43 – JOINT PAIN-FOREARM" and "**pain after fall 6 wks ago**".  (***Id***. at Bates No. SB&J0225) (**emphasis added**).

Mr. Smith returned to Dr. Charoglu on October 1, 2012.  Dr. Charoglu indicated that following the first wrist surgery "[h]e did pretty well at first, **but fell about 2 months ago**." (*See* **Exhibit "6"**, Bates No. SB&J0213) (**emphasis added**).  Mr. Smith again returned to Dr. Charoglu on October 22, 2012, and Dr. Charoglu noted that following the first wrist surgery "[t]he patient did okay **until he fell about 2 ½ months ago**".  (***Id.*** at Bates No. SB&J0209) (emphasis added).  Dr. Charoglu performed a second surgery on Mr. Smith's left wrist on November 15, 2012.

## LAW AND ARGUMENT

Federal Rule of Civil Procedure 37(b)(2) "authorizes a district court 'to dismiss a complaint with prejudice when a party refuses to obey a valid discovery order.'"  *Worrell v. Houston Can! Acad.*, 424 Fed. Appx. 330, 335 (5th Cir. 2011) (*quoting Baston v. Neal Spelce Assoc., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985)).  The factors considered in determining whether dismissal is the appropriate sanction for discovery violations include (1) when the failure to comply is a result of willfulness or bad faith, rather than the inability to comply; (2) where the deterrent value of Rule 37 cannot be achieved by a less drastic sanction; (3) whether the opposing party's trial preparation is substantially prejudiced; and (4) whether the neglect is attributable to an attorney rather than a blameless client, or a party's simple negligence is grounded in confusion or a sincere misunderstanding.  *Worrell*, at 336 (*citing Prince v. Poulos*, 876 F.2d 30, 32 (5th Cir. 1989)).  The analysis of these factors set out below demonstrates that Mr. Smith's repeated false testimony requires dismissal of his Complaint with prejudice or, at a

minimum, dismissal of any claims for damages regarding his lower back, and any claims for damages regarding his left wrist after the first surgery.

> **1.       Mr. Smith's repeated false testimony was both willful and in bad faith.**

Mr. Smith was asked direct questions regarding (1) whether he has prior problems with walking or balance, including whether these problems required him to use a cane; (2) whether he had any history of back problems or received medical treatment for any back problems prior to his fall and (3) whether he had any falls subsequent to his fall at Dollar General.  He answered each one of these questions in the negative.   However, his medical records unequivocally demonstrate that his testimony on each of these three (3) issues was materially and patently false.

Mr. Smith's records from Dr. Stout and Dr. Helveston demonstrate that he reported issues with ambulation and balance, slowness of movement, such that he had to use a cane for assistance at least a year prior to his fall at Dollar General.  Dr. Ugwu-Dike's records, and the prescription records from Cook & Fortenberry, demonstrate that Mr. Smith reported low back pain on four (4) occasions between August of 2010 and May of 2011, and received narcotic pain medication for his pain on a consistent basis during this time frame, including seven (7) days prior to his fall at Dollar General.  Dr. Charoglu's records indicate that Mr. Smith was release from his care following the first wrist surgery in January of 2012, and Mr. Smith did not return to Dr. Charoglu with any complaints regarding his wrist until July of 2012, after he fell and reinjured it.  Dr. Charoglu's records also repeatedly reference Mr. Smith's fall as the cause of the recurrent left wrist pain which led to the second wrist surgery in November of 2012.

The evidence set forth herein demonstrates a clear pattern and practice of false testimony by Mr. Smith on key issues in this case.  Thus, the first element of willfulness or bad faith is met here.

**2.      The violations are clearly attributable to Mr. Smith.**

This factor requires the conduct be attributable to Mr. Smith rather than his counsel.  The false testimony came straight from Mr. Smith's mouth.  Therefore, this element is present.

**3.      Dolgencorp has been prejudiced due to Mr. Smith's misrepresentations.**

Mr. Smith's false testimony has prejudiced Dolgencorp in that it has incurred costs in defending this case that it would not have been required to incur had Mr. Smith provided honest testimony.  Dolgencorp retained medical experts, Dr. David Gandy and Dr. Eugene Quindlen, to review his records and provide opinions regarding Mr. Smith's wrist and back injury claims, respectively.    Had Mr. Smith been honest in his initial discovery responses and his deposition testimony and disclosed his prior back pain and problems, his counsel may have advised him not to pursue this claim, thus sparing Dolgencorp the expense of retaining Dr. Quindlen.  Likewise, had Mr. Smith not falsely testified he had not incurred any falls subsequent to his fall at Dollar General, and had he not claimed that the second wrist surgery he underwent was necessitated by his fall at Dollar General, Dolgencorp likely would not have needed to retain Dr. Gandy to defend the second surgery claim.  These facts demonstrate that the third element is also present here.

**4.      Whether a sanction less drastic than dismissal with prejudice would serve as a deterrent.**

Truth is a cornerstone of the litigation process, such that a failure to tell the truth after taking an oath to do so in a deposition or at trial is punishable by up to five (5) years of imprisonment.  *See* 18 U.S.C. § 1621.  Between his deposition testimony and his interrogatory answers, Mr. Smith failed to tell the truth on at least nine (9) occasions.  If giving false

testimony, under oath, at a deposition is punishable by imprisonment, clearly the dismissal of this lawsuit with prejudice – a far less sanction than imprisonment – is an adequate sanction here. Furthermore, it is unlikely that any sanction short of dismissal of this lawsuit with prejudice would deter future conduct by Mr. Smith, given his repeated failure to tell the truth, both in his discovery responses and in his deposition testimony.

In the alternative, and should the Court determine that the dismissal of Mr. Smith's lawsuit is too harsh a sanction under the circumstances, Dolgencorp submits that an appropriate sanction here would be to prohibit Mr. Smith from seeking or recovering any damages pertaining to his low back injury claim, as well as prohibiting him from seeking or recovering any damages for his left wrist injury claim after the first surgery in August of 2011. This would allow Mr. Smith to proceed on the liability issue and advance his claim for damages associated with the wrist injury and first wrist surgery. This result would be an appropriate sanction in that it directly correlates to the false testimony provided by Mr. Smith regarding his prior issues with ambulating and balance, prior back problems and the subsequent fall where he reinjured his left wrist, necessitating the second wrist surgery.

## CONCLUSION

The evidence presented with Dolgencorp's Motion leaves no doubt that Mr. Smith failed to tell the truth, the whole truth, and nothing but the truth regarding the facts outlined above – facts that go to the heart of the liability and damages issues in this case. Mr. Smith's failure to tell the truth is his own act, for which there should be some consequence. The direct misrepresentations made by Mr. Smith outlined herein are clearly sufficient to warrant the ultimate sanction of dismissal of this lawsuit with prejudice. However, should the Court determine this is too harsh, the minimum sanction that should be levied should be the preclusion

of Mr. Smith's damage claims regarding his low back and his left wrist following the first surgery.

RESPECTFULLY SUBMITTED, this the 15th day of June, 2015.

DOLGENCORP, LLC

BY:     */s/Matthew D. Miller*
              MATTHEW D. MILLER

MATTHEW D. MILLER (MSB #99210)
Copeland, Cook, Taylor & Bush, PA
P. O. Box 17619
Hattiesburg, MS  39404-7619
110 Sheffield Loop
Hattiesburg, MS 39402
(601) 264-6670 (phone)
(601) 264-5660 (fax)
mmiller@cctb.com

## CERTIFICATE OF SERVICE

I, the undersigned, attorney of record for Dolgencorp, LLC, do hereby certify that I have this day electronically filed the foregoing document using the Court's CM/ECF filing system, which provides an electronic copy of same to:

L. O'Neal Williams, Jr.
Williams, Williams & Montgomery, PA
140 Mayfair Road, Suite 1100
Hattiesburg, MS 39402
nealwilliams@wwmlawfirm.net

THIS, the 15th day of June, 2015.

*/s/Matthew D. Miller*
     MATTHEW D. MILLER